1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

JACK OSBORNE,

Case No. 1:22-cv-01538-EPG

12

Plaintiff,

FINAL JUDGMENT AND ORDER
REGARDING PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

13

v.

14

COMMISIONER OF SOCIAL
SECURITY,

(ECF Nos. 1, 19).

15
16

Defendant.

17
18

     This matter is before the Court on Plaintiff's complaint for judicial review of an

19

unfavorable decision by the Commissioner of the Social Security Administration regarding his

20

application for disability insurance benefits and supplemental security income. (ECF No. 1). The

21

parties have consented to entry of final judgment by the United States Magistrate Judge under the

22

provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit.

23

(ECF No. 12).

24

     Having considered the record, administrative transcript, parties' briefs, applicable law,

25

and for the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment

26

and remand this case to the Commissioner for further proceedings.

27

//

28

1

**I.      RFC ASSESSMENT**

Plaintiff contends that the ALJ's RFC assessment regarding Plaintiff's physical impairments[1] is unsupported by substantial evidence and that the ALJ's failure to develop the record regarding Plaintiff's physical impairments constituted harmful error. Specifically, Plaintiff argues the ALJ did not have a medical opinion from any treating, examining, or reviewing source upon which to base the RFC. (ECF No. 19, pp. 8-13). And without any medical opinion to rely on, Plaintiff argues that the ALJ instead impermissibly relied on the ALJ's own interpretation of the raw medical data. (*Id.*)

**A.      LEGAL STANDARDS**

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions and the record as a whole. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Smith v. Saul*, No. 1:18-CV-01614-GSA, 2020 WL 2611680, at *5 (E.D. Cal. May 22, 2020) (rejecting "the residual functional capacity determination for lack of compliance with applicable law and insufficient support from the record as a whole").

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

---

[1] Plaintiff does not challenge the ALJ's RFC assessment regarding Plaintiff's mental impairments.

1     "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly

2     and to ensure that the claimant's interests are considered, even when the claimant is represented

3     by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "Ambiguous evidence, or

4     the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence,

5     triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144,

6     1150 (9th Cir. 2001) (internal quotations and citations omitted).

7     **B.     Analysis**

8     Here, the ALJ determined that Plaintiff has severe physical impairments of coronary

9     artery disease (CAD), cardiomyopathy, mitral valve disorder, obesity, degenerative disc disease

10     of the thoracic spine with postoperative spine fusion and instrumentation, and degenerative disc

      disease of the lumbar spine.[2] (AR 19). The ALJ then determined Plaintiff's RFC as follows:

11

12     > After careful consideration of the entire record, the undersigned finds that the
      > claimant has the residual functional capacity to perform light work, as defined in
      > 20 CFR 404.1567(b) and 416.967(b), except the claimant must be allowed to stand

13     > up to five minutes after every 30 minutes of sitting, and to sit down up to five
      > minutes after every 30 minutes of standing, while remaining on task. The claimant

14     > can occasionally push or pull or operate foot controls with both lower extremities.
      > He can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the

15     > Selected Characteristics of Occupations (SCO), and can occasionally climb stairs
      > and ramps. He can never climb ladders, ropes, or scaffolds, and can never be

16     > exposed to unprotected heights and moving, mechanical parts. The claimant can
      > have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary

17     > irritants, and poor ventilation. The claimant can tolerate occasional exposure to
      > vibration. In addition, he can understand, carry-out, and remember simple

18     > instructions, and make simple work-related decisions.

19

20     (AR 22).

21     In reaching this determination, the ALJ did not rely on the opinions of the state agency

22     consultants who reviewed Plaintiff's applications in December 2020 and February 2021. Notably,

      the state agency consultants found there was insufficient evidence to evaluate Plaintiff's claim.

23

24     (*See* AR 25). However, the ALJ disagreed with this conclusion, noting that each consultant also

       found that Plaintiff suffered at least one medically determinable impairment:

25

26     _____

       [2] In determining Plaintiff's eligibility for disability, the ALJ was required to consider the implications of a
       prior agency decision denying Plaintiff's prior 2016 and 2017 applications for disability. (AR 16). Because

27     "[t]here was new evidence submitted after the prior decision, with updated information on treatment and
       diagnoses," the ALJ found that evidence supported "different findings in the claimant's functional

28     limitations." (*Id.*)

                                                      3

1

2

3

4

5

6

7

8

9

> Regarding opinion evidence, in December 2020, State consultant, G. Dale, M.D., found that there was insufficient evidence to evaluate the claim (Ex. B3A/8; B4A/8). However, this finding is unpersuasive because it is not supported by Dr. Dale's own finding that the claimant has the nonsevere impairment of hypertension (Id.). It is also inconsistent with the overall evidence, which shows that the claimant has the severe impairments of degeneration in his lumbar and thoracic spine with stiffness aggravated with movement (Ex. B4F/70, 157-158).
>
> Similarly, in February 2021, State consultant, D. Tayloe, M.D., recorded that there was insufficient evidence to evaluate the claim (Ex. B7A/9; B8A/9). This finding is unpersuasive because it is not supported by Dr. Tayloe's own opinion that the claimant has the nonsevere impairment of hypertension and the severe impairment of spine disorders (Id.). It is also inconsistent with the claimant's testimony that he experiences sharp and constant pain in his back, trouble walking or standing for long periods, and issues in his legs.

10

11

12

13

(*Id.*) Thus, the ALJ's RFC determination concerning the severity of Plaintiff's physical impairments (including Plaintiff's heart, spine and lumbar conditions) and their resulting functional limitations was based solely on the ALJ's review of the medical evidence and Plaintiff' subjective complaints.

14

15

16

17

18

19

20

Defendant argues an ALJ is not required to obtain an RFC opinion by a medical expert nor is the ALJ prohibited by any general rule from rendering an RFC without referencing a medical opinion. (ECF No. 23, p. 4, 6). According to Defendant, the ALJ had no duty to retain a consultative examiner because the record contained adequate evidence for the ALJ to determine Plaintiff's RFC.[3] (*Id.*, p. 4, 7-8). Defendant contends that Plaintiff's subjective complaints (which the ALJ found to be unpersuasive because they were inconsistent with the record), history of treatment, refusal to participate in treatment, and reported daily activities, when taken together with provider notes and the prior administrative findings, constituted substantial evidence to

21

22

23

24

25

26

27

28

---

[3] Defendant also argues Plaintiff has waived this argument by failing to raise the issue at the administrative hearing, citing *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), which held "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal" *Id.* at 1115. (ECF No. 23, p. 7). *Meanel* concerned new statistical evidence regarding the available number of jobs not available to the ALJ. The Ninth Circuit reasoned that "[t]he ALJ, rather than this Court, was in the optimal position to resolve the conflict between Meanel's new evidence and the statistical evidence provided by the VE. We will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice, which will not occur here." *Meanel*, 172 F.3d at 1115. Here, Plaintiff is not presenting additional evidence or information not available to the ALJ. Further, *Meanel* does not clearly apply in instances where the ALJ has an independent duty, as it does with the duty to develop the record. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel."). Thus, the Court declines to find that the issue has been waived.

1   support the ALJ's RFC determination. (*Id.*, p. 4).

2        Defendant is correct that there is no requirement that an ALJ must obtain an RFC opinion

3   for the ALJ's RFC assessment to be supported by substantial evidence. *Bufkin v. Saul*, 836 F.

4   App'x 578, 579 (9th Cir. 2021) ("ALJs need not seek the opinion of a medical expert every time

5   they review new medical evidence and make a RFC determination."); *Rivera v. Berryhill*, No. ED

6   CV 16-791-SP, 2017 WL 5054656, at * 4 (C.D. Cal. Oct. 31, 2017) (citing *Tackett*, 180 F.3d at

7   1102-03)) (absence of a medical opinion is "not necessarily fatal" to an ALJ's RFC assessment);

8   *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the

9   responsibility of the ALJ, not the claimant's physician, to determine residual functional

10  capacity."). However, as Plaintiff notes, several courts, including this Court, have found remand

11  warranted where the ALJ had a duty to further develop the record by obtaining an RFC opinion.

12  (*See* ECF No. 19, p. 13) (citing *Molina v. Berryhill*, No. 2:17-cv-01991-CKD, 2018 WL 6421287

13  (E.D. Cal. Dec. 6, 2018), *Vasquez v. Comm'r of Soc. Sec.*, No. 1:18-cv-01042-EPG, 2019 WL

14  3714565 (E.D. Cal. Aug. 7, 2019), *Escudero v. Comm'r of Soc. Sec.*, No. 1:18-cv-01136-EPG,

15  (E.D. Cal. Oct. 4, 2019)). Further, while "[t]he Social Security Act provides no guidance how the

16  agency should evaluate medical evidence," *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022),

17  "[t]he ALJ must set out in the record his reasoning and evidentiary support for his interpretation

    of the medical evidence." *Tackett*, 180 F.3d at 1102.

18       Defendant also argues an ALJ is qualified to evaluate the medical evidence and assess the

19  medical evidence. (ECF No. 23, p. 5). However, as several district courts in the Ninth Circuit

20  have noted, "as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in

21  functional terms.'" *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) (quoting

22  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curium) (finding error in ALJ's Step Two

23  determination that claimant did not have severe impairments because it was not supported by any

24  reliable medical opinion); *Miller v. Astrue*, 695 F.Supp.2d 1042, 1048 (C.D. Cal. 2010) (citing

25  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)) (finding that the ALJ improperly "acted

26  as his own medical expert" by "substituting his opinion for [the treating doctor's] professional

27  interpretation of the clinical testing"); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)

28  ("And the Hearing Examiner who was not qualified as a medical expert, should not have gone

outside the record to medical textbooks for the purposes of making his own exploration and assessment as to claimant's physical condition."); *Vaughn v. Berryhill*, 242 F.Supp.2d 998, 1008 (E.D. Cal. 2017) ("[A]n ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."); *Rose P. v. Comm'r of Soc. Sec.*, 414 F.Supp.3d 1339, 1346 (W.D. Wash. 2019) (the ALJ was not "qualified" to explain how raw medical data consisting of "clinical observations [by other providers] of lack of swelling and tenderness, full strength and range of motion, and negative straight leg raise test" conflicted with medical opinion).

Here, the ALJ based Plaintiff's RFC's assessment on his own interpretation of raw medical evidence. For example, the ALJ stated that "[b]ecause of his CAD, cardiomyopathy, and mitral valve disorder, [Plaintiff] can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation." AR 24 (citing AR 657, 746-47). However, as Plaintiff note, these records merely state Plaintiff's diagnoses and do not provide any indication as to what limitations are warranted by such diagnoses. *See* AR 657 (2021 CDCR medical record noting Plaintiff's diagnoses for dilated aortic root, disorder of mitral valve, cardiomyopathy); AR 746-47 (same). It is unclear how the ALJ arrived at this environmental limitation based on these records without any medical source statement explaining the significance of Plaintiff's diagnoses. Additionally, the medical evidence cited by the ALJ in support of Plaintiff's lower extremity limitations appears to be irrelevant to Plaintiff's spine and lumbar impairments or otherwise indicates that the ALJ interpreted raw medical data. AR 24 (citing AR 438 (ER Triage record of Plaintiff's medical clearance visit in December 2021); AR 577-78 (November 2020 thoracic and lumbosacral spine X-ray results); AR 745 (August 2021 CDCR physical therapy treatment note recording Plaintiff's history of cardiac impairments and Plaintiff's statement that "he was not able to run in the treadmill" during Holter monitor test)). While the ALJ also cites to a single clinical note that appears relevant to Plaintiff's spine and lumbar impairments, this note only documents that Plaintiff was "[a]ble to move all extremities in full ROM but has limping gait due to pain as per inmate." AR 24 (citing AR 481) (January 2021 CDCR office clinic note).

Moreover, as discussed above, both state consultative examiners found insufficient data to form an opinion. The ALJ's reason for discounting those assessments—that the examiners had

enough data to determine that Plaintiff had at least some severe impairments—is not persuasive. Having enough data to conclude Plaintiff has some impairments is not the same as having sufficient data to assess work limitations for all impairments.

Because the ALJ impermissibly interpreted medical evidence not susceptible to a lay interpretation or otherwise failed to adequately explain how the medical evidence supported the limitations caused by Plaintiff's spine, lumbar and heart conditions, the ALJ's RFC assessment is not supported by substantial evidence. And because the November 2020 x-ray results and records of new diagnoses were not susceptible to a lay interpretation, the record was ambiguous, thus triggering the ALJ's duty to develop further medical evidence.

## II.      CONCLUSION AND ORDER

Based on the foregoing, the Court finds that substantial evidence does not support the ALJ's RFC assessment. As discussed above, the record has not been fully developed such that the ALJ could make a proper RFC determination regarding the functional impact of Plaintiff's physical impairments. Thus, remand is warranted for additional development of the record and informed medical opinions.

IT IS SO ORDERED.

Dated:    **March 26, 2024**              /s/ _Eric P. Grosjean_
                                          UNITED STATES MAGISTRATE JUDGE